Washburn, J.
On August 16, 1920, the village of Kenmore passed an ordinance granting a franchise to The East Ohio Gas Company, to construct, etc., pipes in the streets of said village, and supply to the inhabitatnts of said village manufactured or artificial gas, charging such inhabitants a certain price therefor, said price being agreed to and stipulated in the ordinance. But such ordinance did not specify the quality of gas to be so furnished, or make any reference thereto.
*277 On October 20, 1920, the plaintiff, having duly requested the city solicitor to bring the action, which he refused to do, brought this action to declare such ordinance invalid, and to enjoin said village and said gas company from undertaking to perform or operate under such ordinance.
In the court below a demurrer was sustained to the petition, and, the plaintiff not desiring to further plead, judgment was rendered against him, dismissing his petition. He now prosecutes error proceedings in this court to reverse that judgment.
By Section 4311, General Code, it is made the duty of the city solicitor to bring injunction proceedings in a court of competent jurisdiction to restrain “the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinance governing itand upon his refusal to perform such duty such suit may be brought by a taxpayer. Section 4314, General Code.
Said franchise ordinance having been duly accepted by said gas company, there can be no doubt but that it constitutes a contract between the village and said company. (City of Cincinnati v. Public Utilities Commission, 98 Ohio St., 320.) The claim of the plaintiff is that such contract was entered into in contravention of a law governing said village, that is, Section 3989, General Code, which provides that the council of such village “shall not agree by ordinance, contract, or otherwise, with any person or persons for the construction or extension of gas works for manufacturing or supplying the corporation or its inhabitants with gas, * * * which does not specify the exact quality of the gas *278 to be furnished, and reserve to the council the right to enforce and exact compliance with such specification, under such rules as the council may prescribe.”
It is conceded that this statute, in the respect mentioned, was wholly and totally ignored; it would seem, therefore, that this action, being specifically authorized, and having been promptly brought, the plaintiff is entitled to the relief sought, unless there are other and later statutes which modify or change or render inoperative the plain provisions of Section 3989, and it is the claim of the defendants that such is the case.
It is admitted that Section 3989 is not specifically amended or changed, nor referred to, by any other or later statutes, but it is claimed that insomuch as “merchantable gas” is defined by other statutes (Section 9331, General Code), and power given the Public Utilities Commission of Ohio to ascertain and fix adequate and serviceable standards for the measurement of quality, pressure, initial voltage or other condition pertaining to the supply or quantity of the product or service rendered by any public utility (Section 614-36, General Code), that therefore such statutes enter into and become a part of the Kenmore contract, and the obligation of the gas company is to be measured and performance regulated by the terms and rules they prescribe.
We have examined the statutes relating to the public utilities commission, and the cases in the supreme court construing the same, and are of the opinion that such statutes do not take away from municipalities the right to enter into contracts with public utilities, relative to the furnishing by the latter of gas and other commodities to their inhabi *279 tants, and that, while the public utilities commission is granted certain powers over public utility companies and the service rendered by them, still, the commission is a board of special and limited jurisdiction and has no power to exercise any jurisdiction beyond that expressly conferred by the statute (City of Cincinnati v. Public Utilities Commission, 96 Ohio St., 270); that it has no power to confer franchises or make contracts which shall be effective between a municipality and a. public utility, or between other parties (Village of Oak Harbor v. Public Utilities Commission, 98 Ohio St., 275); and that, where contracts are entered into between municipalities and public utility companies, in -accordance with the statutes which confer authority, to so contract, said contracts are binding on both parties thereto, subject, in certain contingencies, to the right of one per cent, of the qualified electors to appeal within sixty days to the commission as provided in Section 614-44, General Code. (Ohio River Power Co. v. City of Steubenville, 99 Ohio St., 421.) The appeal provided for in Section 614-44, General Code, is confined to the subject of price, and is otherwise limited in its application. (City of Cincinnati v. Public Utilities Commisson, 98 Ohio St., 320.)
Moreover, municipalities are expressly authorized to enter into contracts of this character by Section 4, Article XVIII of the Constitution, as amended in 1912; the right to contract for the product or service of a public utility necessarily includes the right and authority to agree upon the quality of the commodity to be furnished by such utility, and if the statutes in reference to the -utilities com *280 mission should be construed so as to take that right away from municipalities, and vest the entire control of the matter in the utilities commission, such statutes would be clearly unconstitutional. The supreme court, in a recent decision, not cited to us, reiterates its former holding that where a-gas company enters into a contract with a municipality, and agrees to furnish a service to the inhabitants of the municipality, such contract is binding upon the parties, and the utilities commission is not vested with authority to relieve the gas company of the obligations assumed by it in such contract; and reiterates its former holdings that the powers of the public utilities commission are conferred by statute and it possesses no authority other than that thus vested in it. City of Lima v. Public Utilities Commission, 100 Ohio St., 416.
We do not find that the statutes creating the public utilities commission specifically or by necessary implication repeal Section 3989. Therefore a contract entered into between a municipality and a utilities company in violation of the plain provisions of Section 3989 is illegal, and, upon timely objection thereto, should be so declared by the court. For the protection of the public, that statute provides that the municipality shall not agree, by ordinance, contract or otherwise, for the manufacturing or supplying of gas to the inhabitants of the municipality, unless such agreement shall “specify the exact quality of the gas to be furnished.” Notwithstanding the fact that the utilities commission is granted certain supervision and power over the service to be rendered under such contract, still the inhabitants have a right, in the first instance, to have the con *281 tract specify the quality "of gas to be furnished, so that their rights in that particular may be fixed by agreement and they may be in a position to claim the protection of their rights in any future proceedings before the utilities commission.
For the reasons indicated, we are of the opinion that the court below committed error in sustaining the demurrer and dismissing the petition in this case, and, for that reason, the judgment is reversed.

Judgment reversed.

Dunlap and Vickery, JJ., concur.